[No. 1228-3.   Division Three.   August 8, 1975.]

Le Roi Burton, *Appellant*, v. Douglas County, *Respondent*.

*Ross R. Rakow* and *Tonkoff, Rakow, Dauber & Shaw*, for appellant.

*Larry Carlson* and *Carlson & Drewelow, Inc.*, for respondent.

McInturff, C.J.—Plaintiff (Burton) appeals from a

judgment entered on a jury verdict dismissing his action against the defendant (Douglas County). Burton seeks to recover for damage to his home caused by a road that concentrated and deposited surface waters in a volume on his property.

On June 9, 1972, an extremely heavy rainstorm occurred in the Wenatchee area. Burton's home was located adjacent to the Wenatchee Golf and Country Club, on the west side of Country Club Drive (see diagram). Country Club Drive

had a slight crown in the center of the road that acted to collect and funnel surface waters draining in the watershed from the east to the west. Burton built his home at the low point in a natural drainage area of approximately 19 acres, east of Country Club Drive. On the day of the rainstorm—the severity of which would occur approximately every 25 years—the surface waters, draining from east to west, were funneled onto the Burton's property. Mud and water severely damaged his house, primarily the basement and its contents.

When Burton built his home in 1959 he installed 6-inch drains on his property to drain away water which, particularly during the spring thaw, would be collected by the road and accumulate in front of his house. When sufficient water had collected at a point across from his home, the water would flow across the road and enter onto Burton's property. Until 1972 normal rainfall had created no problem, but prior to this time Mr. Burton had notified the Douglas County Commissioners that Country Club Drive was collecting runoff water and depositing it on his property. The County Commissioners did not correct the drainage problem.

The primary issues to be answered are: (1) does the road constitute an artificial drain or channel; and (2) if so, is Douglas County liable whether or not the rainstorm constituted an act of God? We answer both in the affirmative.

Burton contends that Douglas County—due to the presence of Country Club Drive—artificially channeled surface waters and deposited them on his property to his damage, citing *Wilber Dev. Corp. v. Les Rowland Constr., Inc.*, 83 Wn.2d 871, 523 P.2d 186 (1974). Douglas County contends it did not by "artificial means" convey outlaw waters and deposit them onto Burton's property. Douglas County also urges that a municipality is not liable for injuries caused to private property as a result of the collection of surface waters on its streets, citing *Wood v. Tacoma*, 66 Wash. 266, 119 P. 859 (1911). Douglas County emphasizes that it was not negligent in the performance of its road work; thus, it cannot be held liable for the damage to Burton's property.

██ Ordinarily, a municipal corporation is not liable for consequential damages caused by the increased flow of surface water resulting from the initial grading and improvement of its streets.[1] Under this rule a municipality will not be held liable for damage to private property caused by surface waters due to the presence of its streets. However, it may not collect surface water by artificial means and channel and deposit it on private property causing the owner substantial injury unless the municipality compensates the owner.[2]

A natural drain is defined as one formed by nature in which surface waters drain from higher to lower elevations naturally.[3] Country Club Drive acted as an artificial drain because the water draining from the east to the west, in the absence of the crown in the road, would have continued to run across the road instead of being channeled by it. Liability arises if surface water is artificially collected and discharged on surrounding properties in a manner different from the natural flow of water onto those properties.[4] Country Club Drive acted as an artificial drain, collecting, channeling, and depositing surface waters onto Burton's property to his damage.

Next we consider if the defendant is liable whether or

---

[1] *Wilber Dev. Corp. v. Les Rowland Constr., Inc., supra; Wood v. Tacoma, supra.*

[2] *Wilber Dev. Corp. v. Les Rowland Constr., Inc., supra* at 874-75. In 18 E. McQuillin, *The Law of Municipal Corporations* § 53.144, at 539-40 (3d rev. ed. F. Ellerd 1963), the author states:

The courts constantly remind us that cities and towns have no greater rights than individuals to collect in artificial channels upon their streets and highways mere surface water, distributed in rain and snow over large districts, and precipitate it upon the premises of a private owner, . . . without compensation. It follows that the rule exempting municipal corporations from liability for consequential damages for grading its streets does not relieve it from liability for damages caused by its act in turning water on adjacent lands in a body, and generally the municipality is liable whether or not the work was negligently done.

[3] *King County v. Boeing Co.,* 62 Wn.2d 545, 550, 384 P.2d 122 (1963).

[4] *King County v. Boeing Co.,* 62 Wn.2d 545, 550, 384 P.2d 122 (1963).

not the rainstorm constituted an act of God. The general rule regarding liability for artificially collecting and discharging surface water in a manner different from the natural flow concurring with an act of God was stated in *Tope v. King County*, 189 Wash. 463, 471-72, 65 P.2d 1283 (1937):

> When two causes combine to produce an injury, both of which are, in their nature, proximate and contributory to the injury, one being a culpable negligent act of the defendant, and the other being an act of God for which neither party is responsible, then the defendant is liable for such loss as is caused by his own act concurring with the act of God, provided the loss would not have been sustained by plaintiff but for such negligence of the defendant.[5]

Whether or not the road was negligently constructed is immaterial.[6] The proximate cause of the damage was the initial wrong that occurred because Douglas County's road acted as a channel to collect and divert water from its natural course and ultimately discharge surface water upon Burton's property to his injury.[7] There was no dispute among the experts who testified that the road acted to channel the surface waters during the storm. In fact, one of the Douglas County witnesses, Mr. Englehorn, the Douglas County engineer, described the condition succinctly:

> This is the so-called drainage area from which water would come down to the road and on down through the Burton property. There's no two ways about that. If there's enough water comes down here, it will collect here, comes down the road and runs right into the Burton driveway, or in his house or around his house, or whatever.

Even if the jury deemed the rainstorm to be an act of God, Douglas County is, nevertheless, liable for the damage be-

---

[5] *Accord, Blessing v. Camas Prairie R.R.*, 3 Wn.2d 266, 281, 100 P.2d 416 (1940).

[6] 18 E. McQuillin, *The Law of Municipal Corporations* § 53.144, at 540 (3d rev. ed. F. Ellerd 1963).

[7] *See Tope v. King County*, 189 Wash. 463, 471-72, 65 P.2d 1283 (1937).

cause the road's condition concurred with an act of God in producing the injury. But for the existence of the road, the surface waters would naturally have been dispersed instead of being collected, channeled and discharged upon Burton's property. Therefore, we find that Douglas County was liable. for the injury whether the rainstorm was an ordinary freshet or an unprecedented flood.

Burton finally contends that the court erred in giving instruction No. 4 which submitted to the jury the issue of their contributory negligence. Douglas County claims that Burton was negligent in building his home at the lowest point in a natural drainage system. Burton argues that there are no facts in the record to support the giving of the instruction and that he has no duty to protect himself against the negligent acts of his neighbor, Douglas County, *i.e.*, the collecting and depositing of surface water on his property. One of the elements required to find negligence is the existence of a duty owed to a complaining party.[8] Where there is no duty there can be no negligence. It is clear that Burton owed no duty to Douglas County not to build his home where it was built. Additionally, Douglas County cites no authority for its position. We find that there was no evidence to support the giving of the contributory negligence instruction.

Inasmuch as we have determined as a matter of law that Douglas County is liable for the damage to Burton's property, it is not necessary to answer Douglas County's assignments of error since they relate only to jury instructions.

The judgment of the Superior Court dismissing Burton's action is reversed and the case is remanded to the Superior Court to determine the issue of damages only.

GREEN and MUNSON, JJ., concur.

Petition for rehearing denied October 6, 1975.

Review denied by Supreme Court December 15, 1975.

---

[8]*LaPlante v. State*, 85 Wn.2d 154, 159, 531 P.2d 299 (1975).